```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                        EASTERN DIVISION
```

Mark A. Hughes,                  :

      Plaintiff,           :       Case No. 2:10-cv-674

    v.                           :       JUDGE PETER C. ECONOMUS
                                          Magistrate Judge Kemp

George Lavender, et al.,         :

      Defendants.          :

### REPORT AND RECOMMENDATION

On November 3, 2010, plaintiff Mark A. Hughes filed a motion for preliminary injunction and temporary restraining order (#21) to direct all named defendants to provide him with a medically appropriate course of treatment designed to restore and maintain his physical health.  Subsequently, defendants James Bridenbaugh, Glen Detty, Dr. Richard Harris, George Lavender, and Shawna Ott ("Defendants") moved for summary judgment (#45) on all claims pursuant to Fed. R. Civ. P. 56 on the sole ground that Mr. Hughes failed to comply with the Prison Litigation Reform Act, specifically 42 U.S.C. §1997e(a).  For the following reasons, the Court will recommend that each motion be denied.

    I.  MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

        A. Preliminary Injunction Standard

The Court is required to weigh four factors in determining whether a party is entitled to a preliminary injunction under Fed. R. Civ. P. 65(a).  Those factors are: (1) the likelihood that the party seeking the injunction will succeed on the merits of the claim; (2) the extent to which the party seeking the injunction will be injured unless relief is granted, focusing particularly on the possibility of irreparable injury; (3) whether the injunction, if issued, will cause substantial harm to others; and (4) whether issuance of the injunction is in the public interest.  See Washington v. Reno, 35 F.3d 1093, 1099 (6th

Cir. 1994). No one factor is dispositive. Rather, these four factors must be balanced in determining whether preliminary injunctive relief should issue. In re Delorean Motor Co., 755 F.2d 1223, 1229 (6th Cir. 1985). This balancing of the equities applies to motions for mandatory preliminary injunctive relief as well as requests for prohibitory preliminary injunctive relief. United Food & Commercial Workers Union Local 1099 v. Southwest Ohio Regional Transit Auth., 163 F.3d 341, 348 (6th Cir. 1998).

In addition to the traditional equitable factors, the Prison Litigation Reform Act imposes certain limitations on the granting of prospective relief "in any civil action with respect to prison conditions." 18 U.S.C. §3626(a)(1). Such relief "shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." Id. A district judge may enter a temporary restraining order or a preliminary injunction to the extent otherwise authorized by law, but the discretion to do so is not unfettered.

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm.

18 U.S.C. §3626(a)(2).

### B. Basis for Injunctive Relief

In order to demonstrate his entitlement to a temporary restraining order or preliminary injunction, Mr. Hughes must first establish the violation of a constitutional right. Sarah v. Thompson, 109 Fed.Appx. 770, 772 (6th Cir. 2004). In this instance, Mr. Hughes complains of a lack of adequate medical care. This claim derives from either the Eighth Amendment's prohibition against cruel and unusual punishment or the Fourteenth Amendment's Due Process Clause depending on whether Mr. Hughes is a convicted prisoner or a pretrial detainee. The analysis is the same in either case. See Spears v. Ruth, 589 F.3d 249, 254 (6th Cir. 2009)(right of pretrial detainees to

2

adequate medical care under Fourteenth Amendment is analogous to right of prisoners under Eighth Amendment).

To establish an Eighth Amendment violation, a prisoner must show that he or she has a serious medical condition and that the defendants displayed a deliberate indifference to his or her health. Estelle v. Gamble, 429 U.S. 97 (1976); Wilson v. Seiter, 501 U.S. 294 (1991). In Farmer v. Brennan, 511 U.S. 825, 839 (1994), the Court adopted "subjective recklessness as used in the criminal law" as the appropriate definition for deliberate indifference. It held that "a prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety. . . ." Id. at 837. Officials must be aware of facts from which they could conclude that a substantial risk exists and must actually draw that conclusion. Id. Prison officials who know of a substantial risk to the health or safety of an inmate are free from liability if "they responded reasonably to the risk, even if the harm ultimately was not averted." Id. at 844.

Because an Eighth Amendment medical claim must be premised on deliberate indifference, mere negligence by a prison doctor or prison official with respect to medical diagnosis or treatment is not actionable under 42 U.S.C. §1983. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle 429 U.S. at 106; see also Brooks v. Celeste, 39 F.3d 125 (6th Cir. 1994).

### C. Relief Sought

Mr. Hughes seeks an order directing the named defendants to arrange for his examination both by a qualified infectious

3

disease specialist with experience in treating both Hepatitis C and methicillin-resistant staphylococcus aureus (MRSA) and by an orthopedist.  The defendants would also be ordered to obtain from these specialists an evaluation of the condition of plaintiff's liver, immune system and/or response, and back (lumbar), as well as a prescribed course of treatment and/or therapy which will restore and maintain the full function of his liver, immune system and/or response, and his back as found at the time of his commitment to the Ross County Jail on June 13, 2010.

### D. Analysis
#### i. Likelihood of success on merits

The Court concludes that Mr. Hughes has not established a substantial likelihood of success on the merits regarding his claim that the defendants are deliberately indifferent to his serious medical needs.  The Constitution does not entitle inmates to receive the particular medical treatment of their choice. Hall-Bey v. Ridley-Turner, 154 Fed.Appx. 493, 494 (7th Cir. 2005).  Mere disagreement between an inmate and a treating physician over medical treatment does not rise to the level of deliberate indifference.  Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004); Perkins v. Kansas Dept. of Corrections, 165 F.3d 803, 811 (10th Cir. 1999).  Even where a prisoner raises serious allegations concerning his medical care, he must sufficiently demonstrate that the level of care he is receiving violates constitutional standards in order to obtain preliminary injunctive relief.  McSorley v. Northern Nevada Correctional Ctr., 225 Fed.Appx. 448, 449 (9th Cir. 2007).

Mr. Hughes asserts that Dr. Harris ordered testing only to determine whether plaintiff had Hepatitis C which the doctor should already have known from plaintiff's medical records.  He claims that Dr. Harris lied when he informed him that his liver enzymes were within normal limits and that his viral load was not

4

that high. According to Mr. Hughes, if Dr. Harris would have actually had these tests performed, he would have known the seriousness of plaintiff's Hepatitis C and the need for treatment. Mr. Hughes, however, has failed to proffer any verifying medical evidence that Dr. Harris's failure to order these tests and any corresponding delay in treatment caused a detrimental effect on his health. See Napier v. Madison County, Ky., 238 F.3d 739, 742 (6th Cir. 2001); Dodson v. Wilkinson, 304 Fed.Appx. 434, 440 (6th Cir. 2008).

Mr. Hughes also contends that as early as July 9, 2010, he complained about not getting enough showers and cleaning supplies, as well as the fact that his roommate had already acquired MRSA twice before he was placed in the cell with him. He further maintains that the administration must have been aware of a long MRSA outbreak because several staff members had it. Finally, he complains that he is on his seventh antibiotic regimen and that the MRSA keeps recurring. These complaints, even if true, appear more likely to be the result of negligence on the part of the defendants in preventing his MRSA infections, and not deliberate indifference. See Wooler v. Hickman County, Ky., 377 Fed.Appx. 502, 506 (6th Cir. 2010). Mr. Hughes's medical records further reflect that he has received reasonably prompt treatment for his infections and changes in antibiotics when the MRSA recurred. Any disagreement over whether he has received the best or most appropriate medical treatment for the MRSA infections does not rise to the level of deliberate indifference. See Stewart v. Kelchner, 358 Fed.Appx. 291, 295-96 (6th Cir. 2009).

In addition to his complaints regarding his treatment for Hepatitis C and MRSA, Mr. Hughes states that on October 15, 2010, he fell out of the shower. He was taken to the Adena Hospital emergency room on October 19, 2010, where he underwent a CT scan

5

of his head, back, and knee. He was told that his back was swollen and that it was unclear whether he had suffered any soft tissue or nerve damage. He was referred to an orthopedist if he did not get better in a week. He was also given pain medication and steroids. When he returned to the jail, one of the officers had a bunk brought into his holding cell. On October 22, 2010, Mr. Hughes lost control of his bladder. He is currently taking Tamsulosin for bladder control.

Thus, based on his own statements and on his medical records, it appears unlikely that Mr. Hughes will be able to show that the defendants have not accorded him adequate medical attention or that they have been deliberately indifferent to his serious medical needs. See Murphy v. Grenier, slip op., 2011 WL 180780 at *3 (6th Cir. Jan. 19, 2011). Similarly, Mr. Hughes has not shown that the defendants' alleged policy against prescribing narcotic pain medication likely constitutes deliberate indifference especially where the record indicates that he is receiving ibuprofen twice a day for his back pain. See Wolfel v. Ferguson, 689 F.Supp. 756, 760 (S.D. Ohio 1987)(prison medical staff's refusal to prescribe Valium and Talwin justified by belief that these drugs can cause addiction and abuse).

### ii. Irreparable harm

Mr. Hughes also has not demonstrated that he will suffer irreparable harm if the temporary restraining order and preliminary injunction are not issued. The record shows that his Hepatitis C is being regularly monitored, that his MRSA was successfully treated, and that he received x-rays and a CT scan of his back, as well as follow-up care which included pain and steroid medications and medication to treat his loss of bladder control. See Rush v. Correctional Medical Services, Inc., 287 Fed.Appx. 142, 144 (3d Cir. 2008)(record demonstrated that plaintiff's liver cirrhosis was being continuously monitored and

6

treated with no indication that the condition placed him in danger of immediate irreparable harm).

### iii. Remaining factors

A preliminary injunction in this instance would remove from the staff at the Ross County jail the deference they should be afforded in providing the most appropriate medical care to their inmates.  See Ledger v. Walters, 230 F.3d 1358 (table), 2000 WL 1434687 at *2 (6th Cir. Sept. 19, 2000)(granting deference to most appropriate placement of inmates).  Under these circumstances, and absent a strong showing that the plaintiff will suffer some immediate injury absent an injunction, the public interest would not be served by issuing a preliminary injunction.  Id.

### iv. 18 U.S.C. §3626(a)(2)

Even if the traditional criteria for preliminary injunctions favored issuance of the relief Mr. Hughes requests (which they do not), an order requiring the named defendants to arrange for his examination both by a qualified infectious disease specialist with experience in treating both Hepatitis C and MRSA and by an orthopedist and to obtain from these specialists an evaluation of the condition of plaintiff's liver, immune system and/or response, and back (lumbar), as well as a prescribed course of treatment and/or therapy which will restore and maintain the full function of his liver, immune system and/or response, and his back as found at the time of his commitment to the Ross County Jail would not be "narrowly drawn, extend no further than necessary to correct the alleged harm ..., and be the least intrusive means necessary to correct that harm."  18 U.S.C. §3626(a)(2).  Accordingly, the Court recommends that the plaintiff's motion for a preliminary injunction and temporary restraining order be denied.

## II. MOTION FOR COURT ORDER

Mr. Hughes requests that this Court issue an order to Sheriff George Lavender that plaintiff be allowed to withdraw his consent to release of his medical records.  Mr. Hughes contends that he was never told that he was consenting to the release of his medical records when he signed the form. Rather, he believed that he was merely consenting to medical treatment and relied on the jail staff for this understanding as he did not have his eyeglasses.  Mr. Hughes has since tried to revoke his release on at least two occasions, but was informed each time that he needed a court order.  He specifically objects to Defendants' use of his medical records in this civil action.

The relief Mr. Hughes seeks is clearly injunctive in nature.  In order for this Court to issue such an injunction, Mr. Hughes must first establish the violation of a constitutional right. Sarah, 109 Fed.Appx. at 772.  He appears to rely on the Fourth Amendment to the United States Constitution which protects "the right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures."  See Plaintiff's Reply Brief, p.5.  The Sixth Circuit Court of Appeals has explicitly held, however, that there is no constitutional right to privacy when personal information is being disclosed by the government.  J.P. v. DeSanti, 653 F.2d 1080 (6th Cir. 1981).

Almost all privacy right of nondisclosure cases in the Sixth Circuit are barred by the court's opinion in DeSanti.  Without a "clear indication from the Supreme Court", the Sixth Circuit will not recognize a constitutional privacy right protecting the disclosure of private information.  Id. at 1089.  The reasoning in this opinion has been used to foreclose prisoners from claiming a right to privacy regarding their medical records.  Doe v. Wiggington, 21 F.3d 733, 740 (6th Cir. 1994).

In DeSanti, a class of juveniles contested the disclosure of their "social history" reports prepared by their probation

8

officers after they appeared in juvenile court. DeSanti, 653 F.2d at 1081. The juvenile court disclosed these reports, which contained their family history, school records, and criminal records, to fifty-five government, social, and religious agencies belonging to a "social services clearinghouse." Id. The court determined that although the Constitution protects some aspects of individual privacy, privacy in general is not protected. Id. at 1088.

Specifically, the decision in DeSanti mandates a narrow interpretation of Whalen v. Roe, 429 U.S. 589 (1977) and Nixon v. Adm'r of Gen. Servs., 433 U.S. 425 (1977). Whalen, the first case to allude to a privacy right of nondisclosure, states that "the cases sometimes characterized as protecting 'privacy' have...involved...the individual interest in avoiding disclosure of personal matters." Whalen, 429 U.S. at 600. Nixon cites this portion of Whalen to support its finding that public officials may have a privacy interest in avoiding disclosure of personal matters. Nixon, 433 U.S. at 457. However, although these cases acknowledge that some circumstances warrant a right to nondisclosure of personal information, both cases ultimately rejected the right to privacy claim. Bailey v. City of Port Huron, 507 F.3d 364, 368 (6th Cir. 2007). Whalen and Nixon are the source for all privacy of information decisions, including the Second and Third Circuit Court of Appeals' decisions to grant prisoners a right of privacy in regard to their medical records. See Powell v. Schriver, 175 F.3d 107 (2d Cir. 1999)(gratuitous disclosure of inmate's transsexual status is not reasonably related to a penological interest and violated the inmate's constitutional right to privacy); Doe v. Delie, 257 F.3d 309 (3d Cir. 2001)(there is a right to privacy in one's medical information, particularly with regard to one's HIV status, and a prisoner's right to privacy of medical information is not

9

fundamentally inconsistent with incarceration).

DeSanti rejects any interpretation of Whalen that indiscriminately applies its language, without considering the entire opinion, to create a privacy right of nondisclosure. DeSanti, 653 F.2d at 1088.  Whalen's holding does not address any question about the disclosure of private data by the government. Id. at 1090 (quoting Whalen, 429 U.S. at 605).  Whalen also does not identify any supporting provision of the Constitution for this right, which is "quite a telling failure" when the right in question is not well-established.  Id. at 1090.  Therefore, any blanket extension of the holding to create a privacy right of nondisclosure would be inappropriate.  Only when a fundamental interest is at stake does a constitutional right to privacy exist.  Id.; see Kallstrom v. City of Columbus, 136 F.3d 1055 (6th Cir. 1998)(privacy right of nondisclosure exists if the information is sensitive enough to put the lives of police officers and their families at risk).  Absent a fundamental interest, the Sixth Circuit Court of Appeals does not recognize a prisoner's privacy right of nondisclosure.

A prisoner's privacy complaint about disclosure of the prisoner's medical records is "indistinguishable" from the argument put forth by the juveniles in DeSanti.  Doe, 21 F.3d at 740.  Doe filed a complaint when a guard discovered Doe was HIV positive by opening his medical files without authorization.  Id. In a brief opinion, the Court of Appeals held that this complaint was "foreclosed by the letter and reasoning of our decision in J.P. v. DeSanti."  Id.  Prisoner complaints also have been dismissed when the plaintiff's claim is that a general disclosure of medical information has been made.  Reeves v. Engelsgjerd, No. 04-71411, 2005 WL 3534906 at *4 (E.D. Mich. Dec. 23, 2005)(there was no constitutional right violated when plaintiff's medical condition was discussed with non-medical staff).  The only

10

instance in which a prisoner may have constitutional grounds for relief for disclosure of his medical files is when the disclosure involves non-government personnel such as other inmates. Moore v. Prevo, No. 09-1307, 2010 WL 1849208 at *3 (6th Cir. May 6, 2010). Absent that, prisoners have no constitutional right to privacy in their medical records.

Defendants have not disclosed plaintiff's medical files to other inmates at the jail. Consequently, Mr. Hughes cannot assert a right of privacy in his medical records. The absence of such a right necessarily precludes any constitutional violation by Defendants. Therefore, this Court lacks jurisdiction to order Sheriff Lavender to allow Mr. Hughes to revoke his medical release. Any right of revocation Mr. Hughes may have stems from the language of the release itself and is a matter of state law.

### III. MOTION FOR SUMMARY JUDGMENT
#### A. Summary Judgment Standard

Summary judgment is not a substitute for a trial when facts material to the Court's ultimate resolution of the case are in dispute. It may be rendered only when appropriate evidentiary materials, as described in Fed. R. Civ. P. 56(c)(1)(A), demonstrate the absence of a material factual dispute and that the moving party is entitled to judgment as a matter of law. Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464 (1962). The moving party bears the burden of demonstrating that no material facts are in dispute, and the evidence submitted must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970). Additionally, the Court must draw all reasonable inferences from that evidence in favor of the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654 (1962). The nonmoving party does have the burden, however, after completion of sufficient discovery, to submit evidence in support of any

material element of a claim or defense on which that party would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  Of course, since "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, the responding party is only required to respond to those issues clearly identified by the moving party as being subject to the motion.  It is with these standards in mind that Defendants' motion for summary judgment must be decided.

### B. The Summary Judgment Motion

Defendants argue that they are entitled to summary judgment because Mr. Hughes purportedly failed to exhaust all internal administrative remedies before filing suit as required by the Prison Litigation Reform Act ("PLRA").  In support of that argument, they rely on the affidavit of Glenn Detty, a sergeant at the Ross County Jail where Mr. Hughes is incarcerated. Sergeant Detty is also a defendant in this lawsuit.  Sergeant Detty reviewed plaintiff's file and observed that, as of January 18, 2001, Mr. Hughes had asserted seven grievances and three appeals since becoming an inmate at the jail in June 2010. Sergeant Detty further avers that attached to his affidavit are fair and accurate copies of these grievances and appeals, as well as a copy of the jail's grievance policy.

Policy 6.3 entitled Prisoner Grievance Procedures states that the corrections staff of Ross County Jail will provide prisoners who wish to report a grievance with a grievance form. The prisoner completes the form and addresses it to the jail

administrator. Corrections staff are responsible for delivering the form to the jail administrator.  The jail administrator reviews the complaint and indicates on the form his or her decision, the justification for that decision, and the corrective action to be taken, if any.  The prisoner may appeal the administrator's decision to the sheriff within five days after receiving it.  The appeal must be in writing and in a proper format.  The sheriff will render a final decision within ten days of receiving the prisoner's request for appeal.  That decision is recorded on the grievance form, the original of which is given to the prisoner.  A copy of the form goes into the prisoner's file.

    All of the grievances and appeals which Sergeant Detty found in plaintiff's file are dated after the commencement of this lawsuit.  Defendants additionally claim that several of the grievances concern matters that are not the subject of Mr. Hughes's federal complaint and/or are directed to staff members who have not been named as parties.  Consequently, Defendants maintain that they were not given fair notice or a fair opportunity to address the problems which formed the basis for the present action.

    Defendants alternatively contend that Mr. Hughes also failed to complete the grievance process by filing an appeal with the sheriff within five days of the jail administrator's decision.  According to them, jail staff reviewed and responded to each of the ten grievances attached to Sergeant Detty's affidavit.  Defendants argue that in none of these instances did Mr. Hughes timely request an appeal of their disposition to the sheriff.  While included in these grievances were three prisoner requests on which Mr. Hughes had placed a check next to the space for an appeal, Defendants did not treat them as such because the requests did not appear to correspond to any initial grievances.

    Lastly, Defendants acknowledge that prior to the filing of

their summary judgment motion Mr. Hughes attached other grievances not contained in his file which he claims to have submitted. Defendants contend, however, that the jail has no record of these grievances. Furthermore, all but two of these grievances are dated after the commencement of this lawsuit. The two with prior dates relate to plaintiff's request for medical records, the disposition of which is not a part of any federal claim. Defendants assert that, as a consequence, Mr. Hughes cannot satisfy the exhaustion requirement of the PLRA with respect to the additional grievances.

### C. Plaintiff's Opposition to Defendants' Motion

Mr. Hughes agrees that none of the purported grievances and appeals attached to Defendants' motion for summary judgment have anything to do with the present lawsuit. In his declaration in opposition to the motion, Mr. Hughes states that he did not file any of these attached grievances or appeals. He does, however, offer the yellow inmate copies of five grievances that were not attached to Defendants' motion. One of these, in fact, was given to Sergeant Detty for a reply. The other four, while difficult to decipher, also indicate some response on the part of the jail staff to plaintiff's requests. Mr. Hughes maintains that each of the five grievances should be a part of his file.

Mr. Hughes avers that, prior to being served with a copy of Defendants' motion, he had never seen the grievance procedure identified by Sergeant Detty in his affidavit. Mr. Hughes states that he made numerous requests, both in person and in writing, to see the jail's grievance procedure. On November 4, 2010, Sergeant Mike Preston brought him a copy of the grievance procedure along with a copy of the jail rules which are attached to plaintiff's declaration. Unlike the policy section identified by Sergeant Detty, this grievance procedure contains no deadline for appealing a decision of the jail administrator to the

sheriff; nor is there a definite time period in which the sheriff is to render a decision on the appeal.

On December 30, 2010, Deputy Kevin Richards provided Mr. Hughes with certain discovery materials which included a grievance procedure at section 6.1-17. The procedure found in subsection Y is essentially the same as that given to plaintiff by Sergeant Preston. The discovery materials also contain a separate section entitled "Prisoner Grievances." This section states that prisoners are encouraged to resolve grievances with jail staff on an informal basis whenever possible. If an informal solution is not possible, the prisoner should obtain a request form from a staff member, check the box labeled "grievance," and set out the nature of the complaint in detail. The prisoner then signs and dates the form and gives it to the control or rover officer. That officer also signs the form, adds the date and time of receipt, and returns a copy to the prisoner. The officer is to attempt to resolve the grievance, but if he is unsuccessful, he is to forward the grievance as soon as possible to the SS. There are no deadlines listed.

Mr. Hughes also declares that he has written between 300 and 500 grievances or appeals since he was incarcerated on June 13, 2010. He routinely writes and files the same grievances and appeals for the same issue or incident. He found that by doing so, he stood a better chance of having a yellow copy returned or getting an answer. His grievances and appeals routinely go unanswered. Between October 14 and October 25, 2010, Mr. Hughes sent Colonel T. J. Hollis, the jail administrator, eleven grievances in sealed envelopes which were delivered by Deputy Bill Cox and never returned to plaintiff. On November 2, 2010, Sergeant Preston came to plaintiff's cell and asked him to draw up a list of his unanswered grievances. On November 4, 2010, Mr. Hughes sent Sheriff Lavender six appeals in sealed envelopes

which were delivered by Deputy Cox and never returned.  Mr. Hughes sent another four grievances in sealed envelopes to Colonel Hollis on November 5 and November 6, 2010.  Again Deputy Cox delivered the envelopes and they were never returned.

Mr. Hughes attached some forty-six grievances or appeals to his memorandum in opposition to summary judgment.  He claims to have another sixty grievances or appeals related to his medical care or lack thereof.  He contends that the grievance system simply does not work at the Ross County Jail.  For example, there is no time line for the jail administrator to answer a grievance.  In theory, a grievance could go unanswered forever.  Without an answer, there can be no appeal, and hence, no lawsuit.  Mr. Hughes also points out that there apparently is no tracking system for grievances and no coordinator to oversee the process.  He claims never to have received copies of Defendants' Exhibits 5 and 8 and thus could not have appealed these decisions even had he wanted to.  He also questions why the five grievances attached to his memorandum which were answered never became a part of his file.  Lastly, although under the procedure identified by Sergeant Detty the jail administrator is to respond to the grievance or launch an investigation, Mr. Hughes observes that Colonel Hollis's signature does not appear on any of the forms attached to Defendants' motion for summary judgment as Exhibits 1 through 10.

### D. Analysis

The PLRA provides that an inmate may not bring an action under federal law challenging prison conditions "until such administrative remedies as are available are exhausted."  42 U.S.C. §1997e(a).  Proper exhaustion demands compliance with an institution's grievance policy, including any deadlines. Woodford v. Ngo, 548 U.S. 81, 90-91 (2006).  The Sixth Circuit Court of Appeals requires a prisoner to make affirmative efforts

16

to comply with the facility's grievance procedure and analyzes whether the prisoner's efforts were sufficient under the circumstances.  Napier v. Laurel County, Ky., — F.3d — , 2011 WL 420503 at *4 (6th Cir. Feb. 9, 2011).

The PLRA requires the exhaustion of available remedies only. Little v. Jones, 607 F.3d 1245, 1250 (10th Cir. 2010)(citing 42 U.S.C. §1997e(a)).  A process may be available on its face, but not "available" for purposes of the PLRA because it is futile. See Napier, 2011 WL 420503 at *4.  For example, where a mandatory procedure is in place, but prison officials fail to respond timely to a prisoner's written grievances, the exhaustion requirement is satisfied.  Risher v. Lappin, — F.3d —, 2011 WL 941520 at *3 (6th Cir. Mar. 21, 2011); Boyd v. Corrections Corp. of America, 380 F.3d 989, 996 (6th Cir. 2004).  See also Haynes v. Swanson, Case No. 5:07cv2352, 2008 WL 4346635 at *6 (N.D. Ohio Sept. 18, 2008)(court could not conclude that plaintiff failed to exhaust administrative remedies when county jail officials refused to answer his letters).

Failure to exhaust administrative remedies under the PLRA may serve as a basis for dismissal only if raised and proven by the defendants.  Bruce v. Correctional Medical Services, Inc., 389 Fed.Appx. 462, 467 (6th Cir. 2010).  Because Defendants moved for summary judgment on this defense, it was their burden to show the absence of a genuine issue of material fact regarding non-exhaustion.  Risher, 2011 WL 941520 at *2 (6th Cir. Mar. 21, 2011); Napier, 2011 WL 420503 at *5.

Assuming Defendants satisfied their initial burden under Fed. R. Civ. P. 56(c)(1)(A), Mr. Hughes did not rest on his pleadings, but submitted a declaration pursuant to 28 U.S.C. §1746.  This declaration has the same force and effect as an affidavit.  His statements alone are sufficient to raise the issue of whether Defendants failed to answer his grievances and

thereby rendered their grievance procedure unavailable for purposes of the PLRA. See Flournoy v. Schomig, 152 Fed.Appx. 535, 539 (7th Cir. 2005). In response, Defendants claim that they have no record of the multitude of grievances attached to plaintiff's memorandum in opposition to summary judgment and that the Court should not consider them. In making this argument, they misconstrue the holding of the district court in Hardgrove v. Riley, No. CV-04-4587, 2007 WL 389003 (E.D.N.Y. Jan. 31, 2007). Contrary to Defendants' assertion, that court did, in fact, consider the grievances as authentic for purposes of the summary judgment motion even though it appeared that many of the documents were forgeries. Id. at *7 n.11.

Viewing the evidence in the light most favorable to Mr. Hughes, the Court cannot conclude that Defendants proved the availability of administrative remedies. See Kaba v. Stepp, 458 F.3d 678, 686 (7th Cir. 2006). While the Court has no doubt that the Ross County Jail has some process for inmate grievances, the evidence Mr. Hughes submitted in opposition to summary judgment indicates that Defendants did not timely respond to the bulk of plaintiff's complaints. This conflict in the factual record precludes summary judgment on this issue.

## IV. RECOMMENDED DISPOSITION

Based on the foregoing reasons, the Court recommends that Mr. Hughes's motion for a preliminary injunction and temporary restraining order (#21) be denied. The Court further recommends that plaintiff's motion for a court order (#30) and Defendants' motion for summary judgment (#45) be denied.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which

objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1)(C).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/Terence P. Kemp
United States Magistrate Judge