IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Mark A. Hughes,                      :

    Plaintiff,               :     Case No. 2:10-cv-674

  v.                               :     JUDGE PETER C. ECONOMUS
                                            Magistrate Judge Kemp

George Lavender, et al.,             :

    Defendants.              :

OPINION AND ORDER

This matter is before the Court upon Plaintiff Mark Hughes's motion for preliminary injunction and temporary restraining orders (Dkt.# 21) and motion for court order (Dkt.# 30).  Also before the Court is the motion of defendants George Lavender, Shawna Ott, Dr. Richard Harris, and James Bridenbaugh (collectively "defendants") for summary judgment (Dkt.# 45).  On April 6, 2011, the Magistrate Judge issued a Report and Recommendation (Dkt.# 71) which recommended that all three motions be denied.  Mr. Hughes timely objected to the recommended disposition of his motion for temporary and preliminary injunctive relief, but did not object to the proposed denial of his motion for court order.  Defendants did not file an objection of their own, but did respond in opposition to Plaintiff's objection.  Mr. Hughes then filed a reply in support of his objection.

I.

When objections are received to a report and recommendation on a dispositive matter, the District Judge "must determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).  After review, the District Judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to

the magistrate judge with instructions." Id.; see also 28 U.S.C. §636(b)(1)(C).

## II.

In his motion for preliminary injunction and temporary restraining orders, Mr. Hughes challenges the medical treatment he has been receiving since his arrival at the Ross County Jail for Hepatitis C, methicillin-resistant staphylococcus aureus (MRSA), and chronic pain in his back, neck, and knee. He seeks an order directing defendants to arrange for his examination both by a qualified infectious disease specialist with experience in treating both Hepatitis C and MRSA and by an orthopedist. Under his request, defendants would also be ordered to obtain an evaluation of the condition of Mr. Hughes's liver, immune system, and back, as well as a prescribed course of treatment which will restore and maintain their full function as they existed at the time of his commitment to the Ross County Jail on June 13, 2010.

The Magistrate Judge analyzed Mr. Hughes's request for preliminary injunctive relief under the traditional four-part test for determining whether such relief should be granted. See McPherson v. Michigan High Sch. Athletic Ass'n, 119 F.3d 453, 458 (6th Cir. 1997). The Magistrate Judge found that Mr. Hughes had not established a likelihood of success on the merits and had not shown that he would suffer irreparable harm if the requested injunctive relief were not granted. The Magistrate Judge also concluded that granting a preliminary injunction in this instance would remove from the staff at the Ross County jail the deference they should be afforded in providing the most appropriate medical care to their inmates and that the public interest did not favor such relief. In addition, the Magistrate Judge determined that even had the traditional criteria for preliminary injunctions been met, the specific relief requested is not available under the Prison Litigation Reform Act because it is not narrowly

2

drawn, extends further than necessary to correct the alleged harm, and is not the least intrusive means necessary to correct that harm. 18 U.S.C. §3626(a)(2). For these reasons, the Magistrate Judge recommended that Mr. Hughes's motion be denied.

### III.

Mr. Hughes expressly withdraws from this Court's consideration his request for a preliminary injunction as it pertains to the cause and treatment of his MRSA infections. He makes several objections, however, to the Magistrate Judge's findings and conclusions as they relate to his entitlement to preliminary injunctive relief for evaluation and treatment of his Hepatitis C and for care of his chronic pain. The Court will turn first to the issues surrounding plaintiff's Hepatitis C.

### A.

Mr. Hughes argues that the Magistrate Judge missed the fact that he was already in treatment for Hepatitis C when he arrived at the jail and that defendants had an obligation to continue the same treatment. In his view, prison officials may not substitute their judgments for the course of treatment prescribed by medical professionals such as Dr. Maja Babic, who stated on October 30, 2009, that Mr. Hughes needed one year of weekly therapy, and Dr. Suzanne Smith, who on May 13, 2010, referred plaintiff to Chance, a group which promotes understanding, education, and quality of life for those stricken with viral hepatitis.

While it is true that a defendant who consciously chooses to disregard a nurse or doctor's directions in the face of serious risk exhibits deliberate indifference, see Zentmyer v. Kendall County, 220 F.3d 805, 812 (7th Cir. 2000), that is not what occurred in this case. Mr. Hughes apparently told officials at the Ross County Jail at the time he was admitted that he was taking interferon and ribavirin (medications used in combination for the treatment of Hepatitis C), but there is no evidence that

3

this statement was true.  These drugs are not among the discharge medications listed in the discharge summary prepared by Mease Countryside Hospital in Florida on May 24, 2010, just three weeks before Mr. Hughes began his incarceration at the Ross County Jail.  See Dkt.# 22 Exh. 4.  In fact, it appears from the records attached to plaintiff's reply brief that the only time Mr. Hughes underwent this regimen was in 2001.  See Dkt.# 88.  Further, neither Dr. Babic's prescription nor Dr. Smith's referral mentions these medications.

More importantly, it was not jail officials such as Sheriff Lavender who made the decisions regarding treatment for plaintiff's Hepatitis C condition.  Dr. Richard Harris, who worked as a general physician under contract with the jail until November 15, 2010, decided that Mr. Hughes did not require medications to treat his Hepatitis C based on the fact that his recent liver function tests were satisfactory and his lack of symptoms and excellent appetite.  Affidavit of Doctor Richard Harris, D.O. ¶2.  It appears, in fact, that Mr. Hughes's liver functions were more than satisfactory.  The discharge summary from Mease Countryside Hospital dated May 24, 2010, reported his liver profiles were excellent.

Mr. Hughes points to other recent tests showing that his hepatitis PCR viral load was 2,543,220 (which Dr. Suzanne Smith characterized as abnormal) on June 19, 2008, and 33,000,000 (which Dr. Alice Frazier stated was high) on November 22, 2010.  However, neither Dr. Smith nor Dr. Frazier, who took over as general physician at the jail following Dr. Harris's departure, opined that a viral load of either magnitude indicated treatment with interferon and ribavirin.  The lab report from the Adena Health System in Chillicothe, Ohio, even noted that care should be taken when interpreting any single viral load determination.

Numerous courts have acknowledged that Hepatitis C does not

4

require treatment in every case. See <u>Hix v. Tennessee Dept. of Corrections</u>, 196 Fed.Appx. 350, 357 n.1 (6th Cir. 2006). Contrary to Mr. Hughes's assertion, there are options other than interferon and ribavirin for inmates diagnosed with Hepatitis C who require treatment, even those with high viral loads. See <u>Dodson v. Wilkinson</u>, 304 Fed.Appx. 434, 440 (6th Cir. 2008). Mr. Hughes's charge that defendants opted to treat his symptoms rather than the underlying disease is one that the Sixth Circuit has consistently rejected as not supportive of a claim of deliberate indifference. <u>Hix</u>, 196 Fed.Appx. at 356-57. While such allegations may support a claim for medical malpractice, they do not rise to the level of a constitutional violation. <u>Id</u>.

Mr. Hughes also contends that the Magistrate Judge misapplied <u>Napier v. Madison County</u>, 238 F.3d 739 (6th Cir. 2001), to his case. In his opinion, the requirement that a plaintiff place verifying medical evidence of a detrimental effect of a delay in treatment is inapplicable here because "the facts show an obvious need for medical care that laymen would discern as requiring prompt medical attention by competent health care providers." <u>Blackmore v. Kalamazoo County</u>, 390 F.3d 890, 898 (6th Cir. 2004). Mr. Hughes maintains that anyone who observed him today would easily think that he need a doctor's attention, and he lists various symptoms he believes are related to his Hepatitis C condition.

The Court concludes that it is Mr. Hughes who misapprehends the holdings in <u>Napier</u> and <u>Blackmore</u>. As the Magistrate Judge noted, the <u>Dodson</u> panel applied <u>Napier</u> to a set of facts involving an inmate diagnosed with Hepatitis C and found that Dodson had failed to proffer verifying medical evidence of a detrimental effect caused by a delay in treatment that exposed him to an unreasonable risk of serious harm. The court further held that to the extent that Dodson's complaints could have been

5

viewed as symptoms of his Hepatitis C, the failure of medical personnel to diagnose his condition would amount at best to medical malpractice, and not deliberate indifference.  Dodson, 304 Fed.Appx. at 441.  Further, the Sixth Circuit very recently explained that the obviousness standard set forth in Blackmore "is primarily applicable to claims of denial or delay of *any* medical treatment rather than claims that a plaintiff was denied or delayed in receiving a *specific type* of medical treatment." Blosser v. Gilbert, 2011 WL 1754085 at *7 (6th Cir. May 10, 2011).  Mr. Hughes concedes that medical personnel at the Ross County Jail have aggressively treated those symptoms which he believes stem from Hepatitis C; he complains only that they have failed to prescribe interferon and ribavirin.  Without any verifying medical evidence that the failure to prescribe those medications had a detrimental effect which exposed him to an unreasonable risk of harm, Mr. Hughes's claim fails under the effect-of-delay standard.

Mr. Hughes next takes issue with the Magistrate Judge's finding that his Hepatitis C is being regularly monitored.  Mr. Hughes claims that, to the contrary, defendants have done nothing to monitor his condition.  Mr. Hughes specifically faults Dr. Harris for ordering a Hepatitis C blood test when he already knew plaintiff had the disease and for relying on a discharge summary which was more than three months old to determine that plaintiff's liver enzymes are excellent.

Mr. Hughes's assertion that his Hepatitis C is not being regularly monitored is belied by his admission that medical personnel at the jail have aggressively treated his symptoms.  Mr. Hughes has not proffered any medical evidence suggesting the need for additional testing during the time he has been incarcerated there or that Dr. Harris's reliance on a three-month old discharge summary was unreasonable, particularly when the

6

disease itself progresses over a period of twenty to thirty years.  For instance, liver biopsies every three to five years are considered reasonable.  Dodson, 304 Fed.Appx. at 439-40.  Mr. Hughes conveniently ignores the fact that Dr. Harris also ordered testing for Hepatitis A and B and that Dr. Frazier ordered a viral load test.  For these reasons, the Court determines that the Magistrate Judge's finding that Mr. Hughes' condition is being regularly monitored is amply supported by the record.

   Lastly, while Mr. Hughes accepts as a general proposition the Magistrate Judge's statement that the Constitution does not entitle an inmate to the medical treatment of his choice, see Hall-Bey v. Ridley-Turner, 154 Fed.Appx. 493, 494 (7th Cir. 2005), he asserts that there is only one treatment for Hepatitis C approved by the United States Food and Drug Administration and that treatment is interferon in combination with ribavirin.  Similarly, Mr. Hughes does not take issue with the requirement that a prisoner who raises serious allegations concerning his medical care must sufficiently demonstrate that the level of care he is receiving violates constitutional standard in order to obtain preliminary injunctive relief.  See McSorley v. Northern Nevada Correctional Ctr., 225 Fed.Appx. 448, 449 (9th Cir. 2007).  He likewise acknowledges that in order to prevail on a deliberate indifference claim, he must show that he has a serious medical condition and that defendants displayed a deliberate indifference to his health.  See Estelle v. Gamble, 429 U.S. 97 (1976); Wilson v. Seiter, 501 U.S. 294 (1991).  Mr. Hughes disagrees, however, with the Magistrate Judge's determination that he has failed to meet that burden.  He asserts that the evidence showed that defendants were aware of his serious medical needs and that Dr. Harris was deliberately indifferent to those needs in that his treatment of plaintiff's Hepatitis C was so cursory as to amount to no treatment at all.  See Brown v. Johnson, 387 F.3d 1344,

7

1351 (11th Cir. 2004).

Clearly, Mr. Hughes's argument that interferon in combination with ribavirin is the only treatment for Hepatitis C is without merit. See Dodson, 304 Fed.Appx. at 440. His attempt to characterize his medical treatment as so cursory as to amount to no treatment at all also fails. Mr. Hughes admits that defendants have aggressively treated his symptoms. He simply disagrees with their decisions not to prescribe interferon in combination with ribavirin and not to send him to a qualified infectious disease specialist with experience in treating Hepatitis C. Such decisions are matters of medical judgment and Mr. Hughes's disagreements with them do not rise to the level of a constitutional violation. See id. ("Dodson's disagreement with the testing and treatment he has received since being diagnosed with Hepatitis C does not rise to the level of an Eighth Amendment violation."). Where, as in this case, an inmate has received some treatment, but challenges the adequacy of that treatment, his remedy, if any, lies in state tort law. Westlake v. Lewis, 537 F.2d 857, 860 n.5 (6th Cir. 1976).

B.

Mr. Hughes raises three issues with respect to defendants' treatment of his chronic pain. First, he objects to the Magistrate Judge's citation of Wolfel v. Ferguson, 689 F.Supp. 756, 760 (S.D. Ohio 1987), which held that a prison medical staff's refusal to prescribe Valium and Talwin was justified by the belief that these drugs can cause addiction and abuse. According to Mr. Hughes, defendants have not used that justification nor given any other reason for not allowing the contract physicians to prescribe narcotic pain medication. At the same time, he claims that if he had such a prescription, defendants would give it to him. Mr. Hughes further alleges that defendants have refused to let him see a pain management

8

specialist in Waverly, Ohio, who previously had prescribed him oxycodone.  Mr. Hughes is also aware of other prisoners getting controlled substances and acknowledges that he, in fact, received them for a period of five days after his fall in the shower.  Mr. Hughes compares the ibuprofen he currently receives with putting a band-aid on a shotgun wound and asserts that defendants are denying him a prescribed treatment which in itself constitutes deliberate indifference to his chronic pain.  By plaintiff's own admission, however, defendants have prescribed him Ultram, a narcotic-like pain reliever used to treat moderate to severe pain, and Flexeril, a muscle relaxant.  Mr. Hughes maintains that the medications have not worked and have added more stress to his liver.

Under these circumstances, the Court finds no constitutional violation.  At most, Mr. Hughes is simply dissatisfied with defendants' decision to provide him with ibuprofen, instead of the oxycodone he apparently seeks.  This dissatisfaction does not implicate any Eighth Amendment concerns.  <u>Moses v. Coble</u>, 23 Fed.Appx. 391, 392 (6th Cir. 2001).

Second, Mr. Hughes complains that he has been incontinent since October 22, 2010, is in a wheelchair, and must wear a catheter when he goes to court.  He questions whether the Court has any idea how degrading it is for him to keep a towel in his pants in order not to wet them.  While the Court can sympathize with plaintiff's plight, it can find no constitutional violation here in light of the fact that defendants have provided Mr. Hughes with medication for bladder control.

Finally, Mr. Hughes attacks the decision of Dr. Frazier's and the "powers that be" not to allow surgery on his back because his condition is not life threatening.  Mr. Hughes states that he underwent an MRI on his back and an EMG on December 20, 2010.  He further states that Dr. Lobel, after reviewing those test

9

results, scheduled him for a transforaminal lumbar interbody fusion to take place on January 4, 2011, but that defendants put a stop to it.

The record clearly reflects that Mr. Hughes was taken to the hospital on October 19, 2010, four days after he fell in the shower.  The hospital took X-rays of plaintiff's knee and a CAT scan of his lumbar spine.  The CAT scan revealed no evidence of a fracture, but did disclose nontraumatic degenerative disk changes.  Mr. Hughes received steroids and pain medication at that time, and the jail staff provided him with a bunk to use in his holding cell.  Mr. Hughes apparently returned to the hospital on December 20, 2010, when the MRI and the EMG were done.  However, this took place after the motion for preliminary injunction and temporary restraining orders had been fully briefed.  Mr. Hughes faults Dr. Frazier and the "powers that be" for cancelling his lumbar surgery, but it should be noted that Dr. Frazier is not a party to this lawsuit, and the cancellation of the surgery is not a subject of the complaint nor was it considered by the Magistrate Judge in his Report and Recommendation.  Accordingly, the issue is not properly before the Court.

Were the Court nonetheless to consider Mr. Hughes's arguments regarding the cancellation of his back surgery, it would find no constitutional violation.  Dr. Lobel's assessment of plaintiff's back problem is quite revealing.

> Given the nature of [Mr. Hughes's] complaints and his prior medical history and surgical history, I feel that a transforaminal lumbar interbody fusion is not unreasonable.... I do not anticipate restoring his lumbar alignment tremendously.... Risks include but are not limited to failure to improve neurologically .... Pain relief can be between 50-70% from his current baseline when he is fully healed. I did explain to him that some patients do better,

10

> some patients do worse and it is frequently difficult to predict how long it will take him fully heal or appreciate the benefits of the surgery. Given all the current clinical and radiographic evidence, I do not feel the surgery is unreasonable.

Dr. Frazier and the "powers that be" apparently weighed the uncertain benefits and the associated risks of the surgery, as set forth by Dr. Lobel, and determined it was not necessary at this time.  The Court will not second-guess their medical judgment, particularly where Mr. Hughes has presented no verifying medical evidence that a delay in the surgery would expose him to an unreasonable risk of serious harm.

IV.

This Court has conducted a de novo review of the Magistrate Judge's recommended disposition of plaintiff's motion for preliminary injunction and temporary restraining orders.  Having done so, the Court agrees with the Magistrate Judge that Mr. Hughes has not shown that he is likely to succeed on the merits of his constitutional claim or that he will suffer irreparable harm if the injunctive relief he seeks is not granted. Furthermore, the specific relief sought by Mr. Hughes is not narrowly drawn, extends further than necessary to correct the alleged harm, and is not the least intrusive means necessary to correct that harm, as required by 18 U.S.C. §3626(a)(2), the limitations of which Mr. Hughes failed even to address in his objection.  The Court also has reviewed the Magistrate Judge's recommended dispositions of plaintiff's motion for court order and defendants' motion for summary judgment and finds no error on the face of the record.

V.

Based on the foregoing reasons, the Court **OVERRULES** the objection of Mark Hughes (Dkt.# 77) and hereby **ADOPTS** the

11

Magistrate Judge's Report and Recommendation (Dkt.# 71). Plaintiff's motion for preliminary injunction and temporary restraining orders (Dkt.# 21) is **DENIED**.  Plaintiff's motion for court order (Dkt.# 30) is also **DENIED**.  Further, defendants' motion for summary judgment (Dkt.# 45) is **DENIED**.

    **IT IS SO ORDERED.**

<u>/s/ Peter C. Economus-6/16/2011</u>
Peter C. Economus, Judge
United States District Court
